People of the State of Illinois, Defendant in Error, v. William Levy, Plaintiff in Error.

Gen. No. 40,341.

Opinion filed March 29, 1939. Rehearing denied April 14, 1939.

WM. SCOTT STEWART, of Chicago, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE and BLAIR L. VARNES, Assistant State's Attorneys, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

William Levy, a defendant, was convicted in the criminal court of Cook county after waiving a jury, for conspiracy to rob, and sentenced to the penitentiary. He prosecutes this writ of error.

The indictment for conspiracy alleges that Robert Schaefer and William Levy, on February 25, 1938, conspired with each other and with divers other persons, whose names are unknown, to rob Louise Hansen and steal a wrist watch of the value of $650, contrary to the statute. A plea of not guilty was entered. The jury waiver was signed as to each defendant, the State consenting. On motion of the State, severance was granted to the defendant Levy. Testimony was heard as to the defendant Levy, and at the close of the State's evidence, a motion for a finding of not guilty was entered and denied as to this defendant. The finding of the court at the close of the evidence was that defendant Levy was guilty of conspiracy to commit robbery in manner and form as charged in the indictment. Motion of the defendant in arrest of judgment was entered and overruled and exception. Thereupon the court sentenced the defendant on the finding and judgment to the penitentiary for a term of from one to five years, one dollar fine and no costs.

The evidence of the complaining witness, Louise Hansen, was introduced by stipulation, from which it appears she was an entertainer at Ann Millstone's Club, 1210 East 63rd street, Chicago; that she owned a platinum diamond wrist watch of the value of $650, which she had been wearing; that Levy, who had a reputation as a repairer of jewelry, asked her to take this watch off and he examined it carefully; that he took out the works and said it was the neatest piece of machinery he had ever seen, and that he could duplicate it for $125. There was attached to this wrist watch a black wrist band, and Levy stated he could get her a diamond band very cheap. Schaefer, the

other defendant, testified that he knew Miss Hansen by sight; that he knew the defendant Levy and saw him around the Ann Millstone Club about 10 times; that he talked with him about that number of times; that the first time he talked with Levy about Miss Hansen's watch was in February; that he had three conversations with Levy in respect to the watch; that Levy asked Schaefer if he wanted to make a little extra money and if he could hold up Miss Hansen and get the watch. When asked if he cared to make some money Schaefer answered yes and Levy said if he could get the watch he, Levy, would give Schaefer $50; that defendant Levy said it was a good watch and he wanted to get it and for Schaefer to get it by holdup and bring it to him. They talked again about the watch the next evening and Levy asked him if he had secured it. Schaefer said no and defendant said that they would try again that night. On the second night, or at the second conversation in respect to the watch Levy gave Schaefer a pistol.

There is also evidence of a third conversation in respect to the holdup at which Greinke was present, and the three, Levy, Schaefer and Greinke were drinking beer together. Levy had bought drinks for Schaefer on several occasions, especially the night of the talk in respect to stealing the watch. Schaefer introduced Greinke to Levy and Levy said, "Are you boys going to get this tonight?" and they answered, "We don't know, we'll try." They did not see Levy after this night because they were arrested with the gun in their possession and told the officers where they obtained the gun. The first time Levy talked to Schaefer about getting the watch he was supposed to give Schaefer $50. Schaefer said, "I did not give it a thought whether I would do it or not. I just went along with him. Up to the time I saw Miss Hansen leave I intended to carry through the agreement."

It further appears from the testimony of Harry Greinke that he met Levy and Schaefer at the Ann Millstone Club, and that he heard a part of the conversation between Schaefer and Levy outside of the Millstone Club in February. Levy told Schaefer about a wrist watch, where it was and where Louise Hansen lived. He said she worked at the night club, went home late at night down 63rd Street to Kimbark. Levy said he wanted Schaefer to get her watch and said further that there was a gun and for Schaefer to get the watch even if he had to break in to get it. This witness was with Schaefer when Schaefer was arrested and the gun they used in robberies was the gun that came from Levy. When Levy was arrested he denied that he knew Schaefer.

At the trial Levy testified, and from his testimony it appears that he admitted he was acquainted with Schaefer, and had purchased drinks for him; that this happened in February or March, but stated that he did not converse with him and did not see him after that. This defendant denied the statements made by Schaefer and he also stated that he never met Greinke until he was in custody at the Woodlawn Police Station. Afterward he admitted on cross-examination that he knew Louise Hansen and had seen the watch and examined it.

The defendant Levy in the case before us contends that there was no proof of conspiracy and that the only evidence tending to show conspiracy was given by an accomplice and that such accomplice was not corroborated. The People, however, answer to this contention that there was clearly an agreement to rob Miss Hansen; that the agreement was the gist of the conspiracy and the crime was complete when the agreement was entered into; further, that a defendant may be convicted on the uncorroborated evidence of an accomplice but that in the instant case there was corrobo-

ration by Greinke and by the fact that Schaefer knew nothing about the watch until told by the defendant, and that the defendant had examined a $650 watch and intimated that he could duplicate it for $125.

At the conclusion of this hearing the court found the defendant Levy guilty and sentenced him to imprisonment in the penitentiary, but as to the disposition of the case as against Schaefer in this alleged conspiracy, the record is silent, except it appears in the bill of exceptions filed by the defendant Levy that the court considered what is called SOL 550, being the number of the indictment involved in the case. Just what that means, we are unable to determine. So it appears as a fact that Schaefer, the other defendant indicted with Levy, has not been tried, and we cannot determine whether the court entered a judgment of guilty or not guilty in the matter so far as this conspirator is involved.

From the facts as established by the evidence in this case the trial court was fully justified in finding the defendant Levy guilty beyond a reasonable doubt of the crime of conspiracy to rob, and this conclusion of the trial court is sustained by the Supreme Court in the case of *People v. Drury,* 335 Ill. 539, where the court laid down the rule that applies and said: "The essence of a conspiracy is not the accomplishment of the unlawful object, but it is the unlawful combination or agreement to accomplish the criminal or unlawful purpose. The conspiracy is complete when the unlawful combination or agreement is made, regardless of any subsequent interruption of the efforts to carry out the object of the conspiracy. (*People v. Lloyd,* 304 Ill. 23.) It is not necessary to prove any overt act towards the accomplishment of the unlawful purpose. (*People v. Glassberg,* 326 Ill. 379; *People v. Robertson,* 284 id. 620;) nor is it necessary to prove that the conspirators agreed, in terms, to pursue the

common design. The conspiracy may be proved by direct evidence or by the conduct of the parties, by statements, documents, facts and circumstances which disclose a common design on the part of the accused persons to act together in pursuance of a common criminal purpose.'' So that in the instant case, as the court has stated in the opinion just cited, the essence of the conspiracy is not the accomplishment of the unlawful object, but it is the unlawful combination or agreement to accomplish the criminal or unlawful purpose. Here we have the evidence of the conspirators who agreed for the purpose of robbing Louise Hansen of her property, and by the agreement, as outlined in the evidence, the conspiracy to rob was entered into by these parties, and as previously stated, we are of the opinion that from all the facts as they appear in the record the court was fully justified in finding the defendant Levy guilty of this crime. However, as to whether the judgment was a proper one, we have considered the question as to what must be the judgment of the court in the trial of two named defendants charged with conspiracy such as we have before us.

The rule of law that has been approved by the several courts of appeal in the trial of indictments for a conspiracy is that separate trials may be granted and the cause proceed to judgment, provided, of course, it appears from the record that in the trial for conspiracy of two named as defendants it is necessary that both be found guilty. If only one defendant is found guilty and the other not guilty, it would follow that both would be acquitted. But in this case the defendant Levy was found guilty and no disposition made of the indictment so far as the defendant Schaefer was involved, and it would seem from the authorities, and more especially from the opinion of the Supreme Court of Wisconsin upon a like question in

the case of *Casper v. State,* 47 Wis. 535, wherein the court said: "When a prisoner is alone indicted for a conspiracy with others unknown, or when he is indicted with others who cannot be taken or brought to trial, there appears to be no valid objection to that practice (separate trials); for the verdict against him is that he was guilty with others who cannot be brought to trial, and there is no presumption in his favor of their innocence. But where several are prosecuted together, taken, and may be brought to trial, for conspiracy, and, their trial being severed, one only has been tried and found guilty, there is manifest impropriety in proceeding to judgment against him before the trial of his codefendants. The verdict against him would raise no presumption against them, and their acquittal would be inconsistent with his conviction, and should operate in law to acquit him also. Judgment against him, in such case, would not only be a cruel injustice, but an absurdity, which the law ought not to sanction; for one only cannot be guilty of conspiracy, and judgment against one, upon acquittal of those charged with him, would be not only a wrong to the person, but a blunder in law." The court concluded that the judgment which had been entered in that case should be reversed as being premature, but the verdict to stand pending the prosecution of the other defendants. In the meantime the defendant appealing was to be held in custody, or under recognizance from term to term of the court below, to receive judgment upon the verdict.

The reasoning in the Wisconsin case applies with equal force to the facts in the case before this court. The defendant Levy was the only one found guilty of this charged conspiracy, and his coconspirator, Schaefer, has not been tried, nor his case disposed of, so that this court is not in a position to properly determine the questions involved in this proceeding.

In view of the condition of the record, it is necessary that the judgment be reversed, but the finding of the court of guilt of the defendant Levy to stand pending the prosecution of the other defendant Schaefer. In the meantime, defendant Levy who has brought this writ of error is to be held in custody, or under recognizance from term to term of the court below to receive judgment upon the finding at the conclusion of the final judgment entered as to the guilt or innocence of the defendant Schaefer, the coconspirator.

For the reasons stated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

DENIS E. SULLIVAN, P. J., concurs, and BURKE, J., takes no part.