No. 19,941.

JOHN ARCHULETA *v.* THE PEOPLE OF THE STATE
OF COLORADO.
(368 P. [2d] 422)

Decided February 5, 1962.

Mr. JONATHAN T. BELKNAP, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK
E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for de-
fendant in error.

*In Department.*

Opinion by MR. JUSTICE HALL.

PLAINTIFF in error, herein referred to as Archuleta, was one of four defendants charged in a two count information with:

1. Larceny of a wallet containing about $250.00 from the person of one Garnhart.

2. Conspiracy to perpetrate the larceny mentioned in count one.

By agreement a jury was waived and trial had to the court.

At the close of the people's testimony all defendants moved for dismissal because of lack of proof to establish either charge in the information. The motion was sustained as to three defendants and denied as to Archuleta.

Archuleta elected to offer no evidence and renewed his motion for dismissal.

The trial judge denied this motion and found Archuleta guilty on both counts. He was sentenced to not less than four nor more than eight years in the penitentiary on each count, (1) larceny and (2) conspiracy, the sentences to run concurrently.

Archuleta is here by writ of error seeking reversal.

The people called three witnesses: (1) Garnhart, the alleged victim, and (2) two patrolmen, officers of the Denver Police Department.

Garnhart testified that at the time of the alleged offense he operated a filling station at the northwest corner of Federal Boulevard and West Twenty-first Avenue in Denver, Colorado; that he had known Archuleta for about four months; that he had been in his filling station at about 5:00 P.M. on the day in question (purpose undisclosed); that he returned in a car with the other defendants at about 9:00 P.M., at which time Archuleta went into the filling station and borrowed $10.00 from Garnhart, who then had about $250.00 in his wallet. Garnhart took the $10.00 from his wallet and at that time accepted a couple of drinks of whisky from a bottle that Archuleta or some one of the four had.

The four then drove away and returned about 11:00 P.M., at which time Garnhart was cleaning up his grease rack. One Needleham had been helping Garnhart and he had gone outside and came back bleeding (cause undisclosed); Garnhart then walked to the corner of the building to take down the air hose and there he met Archuleta, who took him by the arm and said, "I think I'll try you for size"; he was smiling and Garnhart thought he was kidding until he swung at and missed Garnhart who, being a professional boxer, immediately pinned Archuleta down and held him there until someone (who, is undisclosed) jumped on his back and pulled his head back, but soon let go, when implored by someone (undisclosed) so to do. Garnhart and Archuleta then got up.

Garnhart testified that he had the billfold when Archuleta swung at him; that he immediately pinned him on the ground and that Archuleta could not have taken his billfold during the scuffle, and pointed out that while he had Archuleta pinned on the ground unable to take the billfold, some other person was on his back. In a couple of minutes after getting up he missed his billfold and started looking for it. He told Needleham his billfold was gone, whereupon Needleham told Archuleta to give back the billfold. Then Garnhart went to the car and told Archuleta, "If you need any money, I'll let you have it, but I'd like to have my billfold." The record is entirely silent as to what, if any, response Archuleta made to the requests of Needleham and Garnhart to return the billfold.

The defendants remained at the filling station "not over five minutes," and then they "backed up and drove off pretty fast." Garnhart then went back in the station, got a flashlight and started looking for his billfold. The record does not disclose what then became of Needleham, though it does appear that Garnhart saw him the next morning, and that is the last we hear of him though

he was endorsed as a witness and a subpoena issued for his appearance at the trial.

About twenty-five minutes after loss of his billfold he saw some police officers (where and how many not disclosed); he saw one of the officers pick up his billfold "in the vacant lot," and there were only four one dollar bills and a bank deposit slip in it.

Next the people called one of the officers to the stand. He testified that he and the other officer were driving south on Federal Boulevard around 11:15 to 11:45 P.M., on August 8, 1960, the date of the alleged offenses, and they observed a car pull out of Garnhart's filling station "very fast" and proceed east on Twenty-first. The two officers, "because of the way the stickups were going on at that time," decided "to check it out, the car and parties." They fell in behind the car on Federal and Twenty-first going east, and they turned on their lights and siren. The car did not then stop but continued east "at approximately 25 miles an hour" two (short) blocks to Decatur, then turned south on Decatur for about one-half block, and turned left into a parking lot, thence east to the alley, and then proceeded north in the alley between Clay and Decatur and stopped at Twenty-first Avenue.

The officers drove alongside, pulled the four defendants out of the car, checked them out, "asked them where they were going (the record does not disclose what, if any, answer was given), checked the car for burglary tools, "just a routine check," and then put the four in their car and took them back to Garnhart's station to see why they pulled out so fast.

They then learned from Garnhart that he had been robbed. At that time another police car, No. 42, came along, so the two officers put the four defendants in car No. 42 and sent them to District 4 Substation at Twenty-sixth and Federal. They then made a written "offense report" (what became of the report and its contents remains a mystery). Next, accompanied by

Garnhart, they retraced their steps to the "suspect car" from which they had pulled the defendants. There the other officer with his light spotted the wallet on the ground; he walked to the wallet and brought it back without opening it, and asked Mr. Garnhart if it was his wallet. Garnhart said "yes." He opened it and found $4.00 and a bank deposit slip inside. They then took the wallet back to District 4 and searched the defendants and found no money. This officer further testified that defendants appeared to have been drinking — "they seemed rational."

"Q. [by District Attorney] Did they appear to understand questions that you asked and give logical answers to those questions? A. Yes, sir, to the best of my knowledge." Nowhere in the record is there any evidence of any questions asked or the "logical answers" thereto.

He further testified that "in terms of a unit of time" this two and one-half short block chase at 25 miles per hour "with red lights and siren on" consumed "in the neighborhood of five to ten minutes."

The second patrolmen testified that he was on duty as the defendants' car left the filling station; he was driving and followed and turned on the red light and siren to stop the car. Both cars pursued the course and stopped as outlined by the first officer.

He found Archuleta behind the wheel; on request he produced his driver's license and was then asked "how come he had left the filling station so hurriedly." Regretfully the officer could not recall the answer. The officers then pulled them out of the car, "shook them down" and put them in the patrol car, and then the two officers went back to the defendants' car and "shook it down for guns and so forth." Archuleta knew what he was doing and when asked questions gave coherent answers (questions and answers undisclosed).

They returned to the filling station and took Garnhart to the parking lot where he spotted the wallet.

"A. This wallet was found * * * on the driver's side

approximately four or five feet from the car in the parking lot in the 2100 block of Decatur Street. Q. Four or five feet from where? A. The police car."

The foregoing is a fair resume of all of the testimony.

█ In finding Archuleta guilty on the first count the trial judge had to conclude that the evidence was sufficient to prove beyond a reasonable doubt that Archuleta did "steal, take and carry away from the person of Harry N. Garnhart" the wallet and its contents. We find no evidence in this record to sustain such a conclusion beyond a reasonable doubt, or at all. The evidence and notable omissions create, rather than dispel, doubts. Garnhart was very positive in his testimony that Archuleta did not and could not have removed the wallet from his person. He went further and pointed the finger of suspicion at an unnamed third person.

Just what happened and who did what at the time and place of the loss of the wallet opens up a wide vista for speculation and conjecture, but falls far short of erasing reasonable doubts. In order to conclude that Archuleta removed the wallet from the person (pocket) of Garnhart, one would have to completely disregard the only positive testimony presented — that of Garnhart. The finding of the trial court that Archuleta stole the wallet from the person of Garnhart is unsupported by any direct evidence; all of the circumstances indicate that someone other than Archuleta took the wallet.

█ The trial court, in finding Archuleta guilty of conspiracy with one or more of the other defendants, and at the same time finding that none of the other three conspired among themselves or with Archuleta, arrives at an incongruous conclusion that finds no sanction in law or fact.

C.R.S. '53, 40-7-36, defines the crime of conspiracy:

"If any two or more persons shall * * * agree, conspire or cooperate to, or to aid in doing any other unlawful act, each of the persons so offending shall on conviction * * * ."

█ In order to be convicted of a conspiracy there must be evidence that two or more conspired to do an unlawful act. Those charged with Archuleta were found not guilty of conspiracy. In effect the trial judge said to three defendants, you did not conspire among yourselves or with Archuleta to do an unlawful act, but you, Archuleta, did conspire with one or more of these three other defendants to do an unlawful act. Such diametrically opposed and conflicting conclusions are wholly insufficient to support a finding of guilt beyond a reasonable doubt that Archuleta conspired with anyone. He could not conspire with himself. 15 C.J.S. 1060, Conspiracy, § 37:

"To constitute a conspiracy there must be a combination of two or more persons; one person cannot conspire with himself * * * ."

The judgment is reversed and the cause remanded with directions to vacate the judgment and discharge the defendant.

It is further ordered that time for filing petition for rehearing shall, in conformity with R.C.P. Colo. 115 (e), be abridged and limited to five days from announcement of this opinion.

MR. JUSTICE FRANTZ and MR. JUSTICE MCWILLIAMS concur.