**Steven Richard MARQUIZ, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 84SC255.**

Supreme Court of Colorado,
En Banc.

Oct. 14, 1986.

Clifford J. Barnard, Boulder, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for respondent.

LOHR, Justice.

We granted certiorari to review the decision of the Colorado Court of Appeals in *People v. Marquiz*, 685 P.2d 242 (Colo.App. 1984), sustaining the defendant's convictions for first-degree murder and conspiracy to commit first-degree murder. We limited our review, however, to the issue of whether the defendant, Steven Richard Marquiz, could be convicted of conspiracy to commit first-degree murder after his two alleged coconspirators had previously been acquitted of conspiracy at separate trials. The court of appeals rejected the defendant's challenge to his conviction for conspiracy, holding that his conviction subsequent to the acquittals of his alleged coconspirators did not violate the rule of consistency. We affirm the judgment of the court of appeals and hold that the rule of consistency is not applicable to situations where all alleged coconspirators are not tried in the same proceeding.[1]

I.

The defendant's convictions stem from the slaying of seventeen-year-old Debra

1. The People also urge us to hold that the doctrine of nonmutual collateral estoppel is inapplicable to criminal prosecutions in which defendants are tried separately. The petitioner, however, does not rely on the doctrine before this court and we therefore decline to resolve the issue.

We note that the United States Supreme Court has held unanimously that the doctrine of nonmutual collateral estoppel does not apply to criminal prosecutions under federal law. *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). It has been held by at least one state court that the doctrine bars the prosecution of an alleged conspirator after the acquittal of his alleged coconspirator in a separate trial. *People v. Superior Court*, 44 Cal. App.3d 494, 118 Cal.Rptr. 702 (1975). This view has been rejected by other state courts. *E.g., People v. Berkowitz*, 428 N.Y.S.2d 927, 50 N.Y.2d 333, 406 N.E.2d 783 (1980). Significantly, the reasons for rejecting the doctrine in criminal cases appear to be largely identical to those that we hold today militate against application of the rule of consistency in this context.

Terhorst early in January of 1981. According to evidence presented at trial, Marquiz believed that the victim had stolen some property from his apartment, and he resolved to kill her. Marquiz enlisted the cooperation of Rudy Gallegos and Antonio Laroza in this endeavor. The three men induced the victim to accompany them to a location on Lookout Mountain, where they stabbed her several times and cut her throat, resulting in her death.

Shortly after the killing, Marquiz, Gallegos and Laroza were arrested and charged with first-degree murder and conspiracy to commit first-degree murder. §§ 18–3–102 and 18–2–201, 8B C.R.S. (1986). The cases against the three defendants were severed for trial. A jury found Gallegos guilty of first-degree murder but not guilty of conspiracy to commit first-degree murder. A separate jury acquitted Laroza of both the murder charge and the conspiracy charge. The trial of Marquiz did not begin until May 17, 1982, well after the trials of the other two defendants had been completed.[2]

A jury found Marquiz guilty of both first-degree murder and conspiracy to commit first-degree murder. He was sentenced to concurrent terms of life imprisonment for first-degree murder and twelve years for conspiracy to commit first-degree murder. Marquiz appealed his judgment of conviction to the court of appeals, asserting several grounds for reversal. The court of appeals upheld the convictions, and we granted certiorari limited to the issue of whether Marquiz could properly be convicted of conspiracy after both Gallegos and Laroza had been acquitted of conspiracy charges in separate trials.

## II.

The rule of consistency, simply stated, is that where all alleged coconspirators but one are acquitted of conspiracy, the remaining alleged coconspirator may not be convicted of conspiracy. *Bradley v. People,* 157 Colo. 530, 403 P.2d 876 (1965);

*Archuleta v. People,* 149 Colo. 206, 368 P.2d 422 (1962). *See* Annot., 19 A.L.R. 4th 192, 198–204 (1983). When alleged coconspirators are tried in separate proceedings, however, the majority of courts that have considered the issue have held that the rule of consistency is inapplicable. *E.g., United States v. Sangmeister,* 685 F.2d 1124 (9th Cir.1982); *United States v. Espinosa-Cerpa,* 630 F.2d 328 (5th Cir.1980); *People v. Superior Court,* 44 Cal.App.3d 494, 118 Cal.Rptr. 702 (1975); *Smith v. State,* 250 Ga. 264, 297 S.E.2d 273 (1982); *Gardner v. State,* 286 Md. 520, 408 A.2d 1317 (1979); *Commonwealth v. Cerveny,* 387 Mass. 280, 439 N.E.2d 754 (1982); *People v. Anderson,* 418 Mich. 31, 340 N.W.2d 634 (1983); *Platt v. State,* 143 Neb. 131, 8 N.W.2d 849 (1943); *Commonwealth v. Byrd,* 490 Pa. 544, 417 A.2d 173 (1980). A few courts have held, without extensive examination of the validity of the rationale for the rule in the context of separate trials, that the rule of consistency applies even when alleged coconspirators are tried in separate proceedings. *Romontio v. United States,* 400 F.2d 618 (10th Cir.1968), *cert. granted,* 400 U.S. 901, 91 S.Ct. 144, 27 L.Ed.2d 137 (1970), *cert. dismissed,* 402 U.S. 903, 91 S.Ct. 1384, 28 L.Ed.2d 644 (1971); *United States v. Bruno,* 333 F.Supp. 570 (E.D.Pa. 1971); *Eyman v. Deutsch,* 92 Ariz. 82, 373 P.2d 716 (1962); *Pearce v. State,* 330 So.2d 783 (Fla.Dist.Ct.App.1976); *People v. Levy,* 299 Ill.App. 453, 20 N.E.2d 171 (1939); *Casper v. Wisconsin,* 47 Wis. 535, 2 N.W. 1117 (1879). We adopt the position of the majority of jurisdictions and hold that the rule of consistency is inapplicable where all alleged coconspirators are not tried in the same proceeding.

The rule of consistency has its origins in a time when all alleged coconspirators were routinely charged in the same proceeding. *See Platt v. State,* 8 N.W.2d at 854; *Commonwealth v. Byrd,* 417 A.2d at 177. In such cases the evidence against the defendants commonly would be identical and the

---

**2.** The trial of Marquiz was delayed due to proceedings regarding his competency to stand trial and his plea of not guilty by reason of insanity. The opinion of the court of appeals details those proceedings. *People v. Marquiz,* 685 P.2d at 245.

composition of the jury would be the same as to each defendant.[3] Were the jury to convict one defendant of conspiracy while acquitting the others "[t]he effect analytically [would be] that the fact-finder in such cases found simultaneously that 'an agreement between two or more persons' existed and that it did not exist with regard to the same alleged conspirators." *People v. Anderson,* 340 N.W.2d at 635. *See also Archuleta v. People,* 149 Colo. at 211–12, 368 P.2d at 425. The rule of consistency therefore serves as a check upon the jury in two ways:

> First, it insures that the jury will adhere to the conspiracy requirement of the concurrence of at least two guilty minds; and second, it prevents the jury from weighing the same pieces of evidence differently in regard to each of the alleged conspirators.

*People v. Superior Court,* 118 Cal.Rptr. at 704; *cf. People v. Coca,* 185 Colo. 10, 13, 521 P.2d 781, 783 (1974) ("A jury will not be permitted to believe the evidence for the purpose of the conspiracy and disbelieve it for the purpose of the substantive crime."). When alleged coconspirators are tried in separate proceedings, however, the reasons for the rule lose much if not all of their force.[4]

There is no inherent inconsistency when different juries return different verdicts in separate trials, because the acquittal of one of the conspirators " 'could [result] from a multiplicity of factors completely unrelated to the actual existence of a conspiracy.' " *Commonwealth v. Byrd,* 417 A.2d at 177 (quoting *United States v. Strother,* 458

F.2d 424, 426 (5th Cir.), *cert. denied,* 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305 (1972)). *See also People v. Anderson,* 340 N.W.2d at 636; *Platt v. State,* 8 N.W.2d at 855. The evidence presented to the juries and the manner in which that evidence is presented may be significantly different and certainly will never be identical. Certain witnesses or other evidence may be available for one trial and not the other, the prosecution may not present all of the available evidence in each trial, new evidence may be discovered between trials, and the prosecution may not present its case as effectively in one trial as it does in the other. *Smith v. State,* 297 S.E.2d at 274; *Platt v. Nebraska,* 8 N.W.2d at 855; *Commonwealth v. Byrd,* 417 A.2d at 177. In some instances, evidence may be admissible at the trial of one defendant but not at that of another. *Cf. Standefer v. United States,* 447 U.S. 10, 24–25, 100 S.Ct. 1999, 2008, 64 L.Ed.2d 689 (1980) (rejecting the applicability of the doctrine of nonmutual collateral estoppel to criminal prosecutions under federal law).

Different verdicts may also result simply from the different compositions of the juries. Separate juries may reasonably take different views of the same evidence. "Moreover, the jury may assume the power to acquit out of compassion or prejudice, and the prosecution is then powerless to seek a judgment notwithstanding the verdict or a new trial on the ground that the verdict is against the weight of the evidence." *Commonwealth v. Cerveny,* 439 N.E.2d at 757. Public policy dictates that we guard against compounding the effect

3. Today, prosecutions of multiple defendants for conspiracy are frequently severed for trial. Section 18–2–202(2)(c), 8B C.R.S. (1986), provides in pertinent part:

(2) In any joint prosecution under subsection (1) of this section [relating to criminal conspiracy]:
....
(c) The court shall order a severance ... as to any defendant who so requests, if it deems it necessary or appropriate to promote the fair determination of his guilt or innocence.

4. It has been suggested that the rule may not retain its validity in any context because of the

"true nature of an acquittal in the American criminal justice system." *United States v. Espinosa-Cerpa,* 630 F.2d 328, 331–32 (5th Cir.1980); *see Government of Virgin Islands v. Hoheb,* 777 F.2d 138, 142 n. 6 (3d Cir.1985) ("[Recent cases decided by the United States Supreme Court] suggest that the rule of consistency may be a vestige of the past."). We are not faced with a case involving a traditional application of the rule of consistency, and we therefore decline to express any view as to whether the rule retains its validity in the context of a joint trial of all alleged coconspirators.

of a possibly erroneous or irrational acquittal. " 'Because there may have been a miscarriage of justice as to one joint offender is no reason why there should also be a miscarriage of justice as to the other joint offender.' " *Roberts v. People,* 103 Colo. 250, 261, 87 P.2d 251, 257 (1938) (upholding conviction as accessory notwithstanding prior acquittal of principal, and quoting *Woody v. State,* 10 Okla.Cr. 322, 136 P. 430, 432 (1913)).

The value of the rule of consistency as a check upon the jury also disappears in the context of separate trials.

Application of the consistency rule in this situation neither insures that the two juries understand the crime of conspiracy nor that they evaluated the facts of the case consistently in regard to each conspirator.

*People v. Superior Court,* 118 Cal.Rptr. at 705.

We conclude that the policies sought to be furthered by the rule of consistency are not served by application of the rule to

situations in which all alleged coconspirators are not tried in the same proceeding.[5]

The judgment of the court of appeals is affirmed.[6]

---

5. The People also contend that Marquiz's girlfriend was an unindicted coconspirator with whom Marquiz conspired. The parties agree that a defendant may be convicted of conspiracy notwithstanding the fact that all other indicted coconspirators have been acquitted if it is alleged and proved that there is an unindicted person with whom the defendant conspired. *See, e.g., United States v. Maniego,* 710 F.2d 24, 26 (2d Cir.1983); *United States v. Albert,* 675 F.2d 712, 714 (5th Cir.1982); *United States v. Hopkinson,* 631 F.2d 665, 668 (10th Cir.1980), *cert. denied,* 450 U.S. 969, 101 S.Ct. 1489, 67 L.Ed.2d 620 (1981); *People v. Cohen,* 12 Cal. App.3d 298, 90 Cal.Rptr. 612, 631 (1970); *Commonwealth v. Byrd,* 490 Pa. 544, 417 A.2d 173, 177 (1980). *See also* Annot., 19 A.L.R. 4th 192, 219–20 (1983). Our holding that the acquittals of Gallegos and Laroza on conspiracy charges present no barrier to the conviction of Marquiz for conspiracy to commit first-degree murder, however, eliminates the necessity to determine whether Marquiz's girlfriend was an unindicted coconspirator.

6. The People urge us to hold that our conspiracy statute, section 18–2–201, 8B C.R.S. (1986), adopts the "unilateral" theory of conspiracy, whereby agreement on the part of only one person is sufficient to establish the crime. Section 18–2–201(1) provides:

A person commits conspiracy· to commit a crime if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime, or he agrees to aid the other person or persons in the planning or commission of a crime or of an attempt to commit such crime.

However, in view of our rejection of the applicability of the rule of consistency in the context of separate trials of alleged coconspirators, it is not necessary for us to determine whether the People's position is correct. Prior to the adoption of the present conspiracy statute in 1971, ch. 121, § 40–2–201, 1971 Colo.Sess.Laws 388, 415–16 (now codified at § 18–2–201, 8B C.R.S.), we held uniformly that conspiracy required an agreement between two or more persons. *E.g., Pooley v. People,* 164 Colo. 484, 436 P.2d 118 (1968); *Robles v. People,* 160 Colo. 297, 417 P.2d 232 (1966). In cases decided under the present statute, we have continued to assume that to be the case. *E.g., People v. Shannon,* 189 Colo. 287, 539 P.2d 480 (1975); *People v. Johnson,* 189 Colo. 28, 536 P.2d 44 (1975). The People's argument that the present statute adopted the "unilateral" theory of conspiracy has never been presented to us directly.