## No. 27022

**The People of the State of Colorado ex rel. Terrance L. Farina, District Attorney in and for the Twenty-First Judicial District, State of Colorado v. The District Court of the Twenty-First Judicial District and The Honorable William M. Ela, a Judge thereof**

(553 P.2d 394)

Decided July 6, 1976.

Terrance L. Farina, District Attorney, John A. Achziger, Deputy, for petitioner.

Williams, Turner & Holmes, J. D. Snodgrass, for respondents.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is an original proceeding in which the district attorney for the Twenty-first Judicial District, Terrance L. Farina, has asked this court to rule that the district court for that judicial district acted in excess of its authority in vacating a release hearing scheduled in that court. The court based its decision to vacate on the doctrine of *res judicata.* We issued a rule to show cause by reason of the importance of the issue raised. We now discharge the rule.

In late 1973, David Louis Ethington allegedly committed several burglaries and thefts in Mesa County, Colorado. Shortly thereafter, he allegedly committed an additional burglary and theft in Gunnison County. Ethington was arrested, and was charged in Mesa County District Court. Subsequently, Gunnison County requested and was granted permission to transport Ethington from Mesa County to Gunnison County for formal charging there. While in Gunnison, Ethington escaped from the County jail, was apprehended and charged with felonious escape.

On March 21, 1974, before the defendant was returned to Mesa County, he pleaded not guilty in Gunnison — by reason of insanity — to the escape charge. The court found that the People had failed to prove the defendant's sanity at the time of the offense beyond a reasonable doubt. The court ordered the defendant committed to the Colorado State Hospital.

Subsequently, Ethington was transferred to Mesa County for trial, and was found not guilty by reason of insanity, of second degree burglary and theft. Again, he was committed to the Colorado State Hospital.

Approximately a year later, pursuant to the request of Ethington, release hearings were scheduled in both Gunnison and Mesa Counties for the purpose of determining if defendant was eligible for release from the hospital.[1] Following the release hearing on September 17, 1975, in Gunnison, a jury of twelve found Ethington eligible for release. In that hearing, Ethington presented numerous members of the hospital staff, who had had daily contact with him in the hospital. The People, represented by the dis-

---

[1] Eligibility for release is conditioned upon whether "the defendant has no abnormal mental condition which would be likely to cause him to be dangerous . . . in the reasonably foreseeable future." Section 16-8-120, C.R.S. 1973.

trict attorney's office for the Seventh Judicial District, presented the only expert testimony, being that of the staff psychiatrist at the Colorado State Hospital. The psychiatrist had had minimal contact with Ethington, having held his position for only a few months.

On October 28th, approximately one month before the scheduled date of the release hearing in the district court in Mesa County, the court there on its own motion raised the issue of *res judicata*. It asked counsel for the parties to brief and argue the question of whether the hearing in Gunnison County precluded the hearing on the same issue in Mesa County.

Following the filing of briefs and oral argument, the court concluded that the Gunnison County verdict was *res judicata* as to the Mesa County proceedings. The court ruled that, based upon the proceedings in Gunnison County, Ethington was eligible for release. The court granted a stay to allow the district attorney to appeal the ruling. The district attorney filed his petition here; and we issued a rule to show cause and a stay of the proceedings.

The single issue before this court and before the district court in Mesa County is whether the defendant Ethington is required to submit the matter of his eligibility for release to a second jury trial before he may be released.

The district attorney asks for

"the opportunity to contest the release of . . . Ethington with considerably more vigor than did the Seventh Judicial District and . . . to present not only additional witnesses from the one who testified at the [prior] release hearing . . . but also David Louis Ethington's examining psychiatrist [who] has, since the time of the Gunnison hearing, completed further examinations of his patient."

Although all the parties agree that the doctrine of *res judicata* has application in criminal proceedings, the district attorney argues that the doctrine should not always be applied. He contends that, since guilt or innocence is not at issue and thus double jeopardy is not involved, the doctrine of *res judicata* has no applicability to the release hearing. We take a contrary view.

It appears that this is a case of first impression in this jurisdiction. The parties cite no cases, nor have we found cases from any other jurisdiction, which treat this particular issue. The petitioner relies on *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), which declared that collateral estoppel is embodied in the Fifth Amendment's guarantee against double jeopardy. *See also Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), which held that the Fifth Amendment's prohibition against double jeopardy was enforceable against the state through the Fourteenth Amendment.

The doctrine of *res judicata*, relied upon by the District Court in Mesa County, dictates that

"any right, fact, or legal matter which is put in issue and directly adjudicated or necessarily determined by a court of competent jurisdiction is conclusively settled by such judgment and cannot afterwards be litigated or raised again by the same parties. . . ." *Trujillo v. People*, 178 Colo. 136, 496 P.2d 1026 (1972).

The companion doctrine of collateral estoppel extends the doctrine of *res judicata* to ultimate facts previously decided, so that "'when an issue of ultimate fact has once been determined by a final and valid judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . .'" *People v. Kernanen*, 178 Colo. 234, 497 P.2d 8 (1972). This is true even when a different claim for relief is being pursued.

While admittedly double jeopardy is not involved here, rulings of collateral estoppel in criminal cases are often grounded upon the double jeopardy clause of the Fifth Amendment. *Ashe v. Swenson, supra.*

■ Petitioner argues that since double jeopardy is not here involved, the state is free to attempt to enhance its proof that Ethington is not eligible for release, and that we should not apply the doctrine of collateral estoppel. From our reading of *Ashe, supra*, we do not reach the same conclusion. Although the holding of *Ashe* rests upon the constitutional prohibition against double jeopardy, we do not view the doctrine of collateral estoppel so narrowly as to say that double jeopardy must be involved before the application of collateral estoppel may be made.

In *People v. Kernanen*, 178 Colo. 234, 497 P.2d 8 (1972), this court held that a defendant who had been found insane at the time of the commission of one offense could be subject to a finding of sanity at the time of a second offense allegedly committed only a few hours later. This court in discussing the doctrine of collateral estoppel in that case, made it clear that the defendant must be afforded the right in the second sanity trial to "claim finality with respect to the fact that he had become insane at the time of the commission of the first offense." Thus the issues, though closely related in the two sanity hearings involved in that case, were two separate issues.

The applicable test for eligibility for release from commitment, or eligibility for conditional release, pursuant to section 16-8-120(1), C.R.S. 1973, is whether the defendant "has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future."

In the case before us, the issue (eligibility for release) to be decided in each release hearing is exactly the same. The question before the court in Mesa County in the second scheduled release hearing was properly held by the court to be "in fact precisely the same question submitted to the jury in Gunnison County. The People are the opponents of the same defendant in both counties." The court correctly found that the severity of the offenses with which the defendant was originally charged was irrelevant.

It said:
"The sustaining of the insanity plea disposed of those charges regardless of severity, and the defendant cannot be tried again on those offenses."

The district attorney further argues that the application of the trial court's ruling will encourage forum shopping, in that an individual who has been committed in more than one judicial district, may now choose the jurisdiction in which the release hearing will be heard. The defendant, the district attorney asserts, "may even be able to find a jurisdiction that will simply confess his motion for release." We do not join him in his thought that we are creating a grave threat to the criminal justice system that he portrays. This case, as evidenced by the dearth of authority, is a rare one. The threat of forum shopping in the hope of choosing a jurisdiction which will "confess a motion for release" from a commitment of the criminally insane simply does not seem realistic.

█ The court in Mesa County properly concluded that the defendant must be released by the Mesa County District Court subject only to the conditions of supervision provided by the court pursuant to section 16-8-115(3), C.R.S. 1973.

We, therefore, discharge the rule.