Argued and submitted September 16, 1981, affirmed March 22, 1982

# STATE OF OREGON,
*Respondent,*

*v.*

# DENNIS EUGENE CAMPBELL,
*Appellant.*

## (No. C80-10-33681, CA A20373)

642 P2d 346

Marilyn C. McManus, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his jury conviction for robbery in the first degree. ORS 164.415.[1] He contends that the court erred (1) in denying his motion in limine and motion for new trial, because the state was collaterally estopped to litigate whether he was armed with a deadly weapon; (2) in denying his motion for judgment of acquittal, because the evidence was insufficient to show a weapon was used in the robbery; and (3) in imposing an excessive sentence.

Richard Ashley was working at a Plaid Pantry in Portland when two men entered wearing handkerchiefs over their faces and said, "This is a robbery, move." Each had his right hand in his jacket pocket, and each looked like he was holding an object of some kind in his pocket. Ashley thought they were armed. After taking some currency from the cash register, one of the men ordered Ashley to open the safe. When he could not, the robbers produced a tool, opened the safe and pulled out the money. The men then left. Ashley called the police and gave them a description of the men, the tool and the denominations of currency taken in the robbery, which were broadcast by police radio.

Shortly thereafter, a car driven by defendant was stopped for speeding. Observing that defendant and his companion, Wallace, matched the descriptions of the robbery suspects, the officer making the stop called for additional police. Upon their arrival, defendant was arrested. With defendant's consent, the automobile was searched, and a loaded revolver was discovered between the right passenger seat and the door. A tool was discovered in the front seat. Under the back seat, earlier occupied by Wallace, the police found a pistol. Next to the pistol was currency sorted by denomination. Ashley later identified a

---

[1] ORS 164.415 provides:

"(1) A person commits the crime of robbery in the first degree if he violates ORS 164.395 and he:

"(a) Is armed with a deadly weapon; or

"(b) Uses or attempts to use a dangerous weapon; or

"(c) Causes or attempts to cause serious physical injury to any person.

"(2) Robbery in the first degree is a Class A felony."

$1 bill found in the car which had electrical tape on it as one taken during the robbery.

Two eyewitnesses to the robbery, fifteen-year-old Carman and fourteen-year-old Small, were brought to the stop scene. The boys had been walking by the Plaid Pantry when they saw Ashley backed up against the counter, his hands in the air, with one masked man facing him and another masked man bent over. Frightened, the boys ran up the street. In so doing, they passed a car. Carman saw someone shifting the car into gear. When he heard the car start up, he saw two men run to the car, and he assumed they were the same men he had seen in the store. Carman identified defendant's car as the one he had seen earlier. He also identified defendant as being one of the men who had run to the car from the Plaid Pantry. Later, Ashley identified both defendant and Wallace. At trial, however, Ashley was unable to identify defendant.

Defendant contends that the court erred in failing to apply principles of collateral estoppel to bar the state from presenting its case on the charge of robbery in the first degree. Defendant, Helen Walden and Wallace were charged with armed robbery. In Walden's case, tried prior to defendant's, the state proceeded on the theory that defendant and Wallace were the principals who entered and robbed the store and that Walden was an accomplice waiting in the getaway car. Relying on testimony substantially the same as that given in defendant's trial, the court allowed a motion for acquittal on the robbery charge after finding the evidence insufficient to show that the two men were armed when they entered the store.

The issue here is whether that finding in Walden's case estopped the state to prosecute defendant for robbery in the first degree. It did not.

In civil litigation, mutual identity of parties is no longer a prerequisite to the application of collateral estoppel. *State Farm v. Century Home,* 275 Or 97, 103, 550 P2d 1185 (1976); *Bahler v. Fletcher,* 257 Or 1, 19, 474 P2d 329 (1970). However, in a criminal case, collateral estoppel may only be asserted by the person who was the defendant in the prior proceeding. *Timms v. Cupp,* 38 Or App 339, 343,

590 P2d 264, *rev den* 286 Or 637 (1979). Defendant was not a party to Walden's case.

Defendant urges us to follow the lead of the California and New Jersey Supreme Courts and abandon the identity of parties requirement in criminal cases. *People v. Taylor,* 12 Cal 3d 686, 698, 117 Cal Rptr 70, 527 P2d 622, (1974); *State v. Gonzalez,* 75 NJ 181, 192, 380 A2d 1128 (1977). He argues that that would promote policies of judicial economy and certainty of judicial orders and would insure public confidence in the judicial system. *See* Note, *Collateral Estoppel in Criminal Prosecutions: Time to Abandon the Identity of Parties Rule,* 46 S Cal L Rev 922 (1973).

Persuasive policy considerations indicate that the rule requiring mutual identity of parties in criminal cases should be retained. Some of those policy considerations have been recently articulated by the United States Supreme Court in *Standefer v. United States,* 447 US 10, 22-23, 100 S Ct 1999, 64 L Ed 2d 689 (1980):

> " * * * First, in a criminal case, the Government is often without the kind of 'full and fair opportunity to litigate' that is a prerequisite of estoppel. Several aspects of our criminal law make this so: the prosecution's discovery rights in criminal cases are limited, both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt, cf. Fed. Rule Civ. Proc. 50; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence, cf. Fed. Rule Civ. Proc. 59; and it cannot secure appellate review where a defendant has been acquitted. See *United States v. Ball,* 163 US 662, 671, [16 S Ct 1192 41 L Ed 300] (1896).

> "The absence of these remedial procedures in criminal cases permits juries to acquit out of compassion or compromise or because of '"their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." ' *Dunn v. United States,* 284 U.S. 390, 393 [76 L Ed 356, 52 S Ct 189, 80 ALR 161] (1932), quoting *Steckler v United States,* 7 F.2d 59, 60 (CA2 1925). See generally H. Kalven & H. Zeisel, The American Jury 193-347 (ed 1976). It is of course true that verdicts induced by passion and prejudice are not unknown in civil suits.

But in civil cases, post-trial motions and appellate review provide an aggrieved litigant a remedy; in a criminal case the Government has no similar avenue to correct errors. Under contemporary principles of collateral estoppel, this factor strongly militates against giving an acquittal preclusive effect. See Restatement (Second) of Judgments § 68.1 (Tent. Draft No. 3, 1976) (denying preclusive effect to an unreviewable judgment)." (Footnotes omitted.)

*Standefer* also points out that the application of non-mutual estoppel in criminal cases is further complicated by the existence of rules of evidence and exclusion unique to the criminal law.

"* * * It is frequently true in criminal cases that evidence inadmissible against one defendant is admissible against another. The exclusionary rule, for example, may bar the Government from introducing evidence against one defendant because that evidence was obtained in violation of his constitutional rights. And the suppression of that evidence may result in an acquittal. The same evidence, however, may be admissible against other parties to the crime 'whose rights were [not] violated.' *Alderman v. United States,* 394 U.S. 165, 171-172 [22 L Ed 2d 176, 89 S Ct 961] (1969). Accord, *Rakas v. Illinois,* 439 U.S. 128, 134 [58 L Ed 2d 387, 99 S Ct 421] (1978). In such circumstances, where evidentiary rules prevent the Government from presenting all its proof in the first case, application of nonmutual estoppel would be plainly unwarranted." (Brackets in original; footnote omitted). 447 US at 23-24.

Finally, *Standefer* recognizes the essential difference between a civil and a criminal case, and the effect that the application of collateral estoppel would have in each instance. In a dispute between private litigants over private rights, the *Standefer* court tells us,

"* * * no significant harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and there is no sound reason for burdening the courts with repetitive litigation.

"That is not so here. The Court of Appeals opinion put the point well:

"'[T]he purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindicate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant. The public

interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases and we are thus inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction. To plead crowded dockets as an excuse for not trying criminal defendants is in our view neither in the best interests of the courts, nor the public.' 610 F.2d, at 1093.

"In short, this criminal case involves 'competing policy considerations' that outweigh the economy concerns that undergird the estoppel doctrine. [Citations omitted.]" 447 US at 24-25.

Defendant received a fair trial at which the state bore the burden of proving beyond a reasonable doubt every material element of robbery in the first degree. He was entitled to no less, and to no more. We conclude the trial court properly denied defendant's motion in limine and motion for a new trial.

■ Defendant next contends that the court erred in denying his motion for judgment of acquittal. On denial of a defendant's motion for judgment of acquittal, we view the evidence in the light most favorable to the state. *State v. Krummacher,* 269 Or 125, 137-38, 523 P2d 1009 (1974). The issue here is whether any rational trier of fact could have found beyond a reasonable doubt that either defendant or his alleged accomplice, Wallace, was armed with a deadly weapon at the time of the robbery.

The evidence showed that two men walked into the Plaid Pantry with handkerchiefs over their faces and declared, "This is a robbery, move." Each kept his right hand in his jacket pocket pointing outwards, conveying the impression that he was holding a gun. The victim identified defendant and Wallace as the robbers. A witness identified the car driven by defendant as being the one he had seen earlier near the scene of the robbery. He also identified defendant as being one of two men he had seen run from the Plaid Pantry. In a search of the car driven by defendant, a loaded revolver was discovered between the right passenger seat and the door. A tool was under the front seat. A pistol was found under the back seat. Money taken from the store was found next to that gun.

From that evidence, a rational jury could have concluded that defendant, Wallace or both were armed with a deadly weapon during the robbery. The jury also could have concluded beyond a reasonable doubt that, after leaving the store, the two men placed the guns, the tool and the stolen money in the car. The trial court properly denied defendant's motion for judgment of acquittal.

■     Defendant also contends that his sentence of ten years imprisonment with a five year minimum is excessive and constitutes cruel and unusual punishment. We disagree. *State v. Dinkel,* 34 Or App 375, 389, 579 P2d 245 (1978), *rev den* 285 Or 195 (1979).

Affirmed.