Argued and submitted July 15, affirmed October 29, 1986

## STATE OF OREGON,
*Respondent,*

*v.*

## DANA B. DEWHITT,
*Appellant.*

(M 502 427; CA A38611)

727 P2d 151

David K. Allen, Portland, argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his conviction for driving while under the influence of intoxicants (DUII). *Former* ORS 487.540.[1] He contends that the trial court erred in denying his motion to suppress evidence of a breath test result and in entering a judgment of conviction. The issues are whether the arresting officer had probable cause to arrest defendant for DUII and, if so, whether the state was collaterally estopped from prosecuting him. We affirm.

At about six p.m. on December 27, 1984, Officer Calder investigated a two-car accident. He talked to witnesses at the scene, including Susan Trudeau, who, apparently, was the only eye-witness willing to remain at the scene. Calder observed that defendant, the driver of one of the cars, was "kind of unsteady walking." That was not of particular concern to Calder by itself, because defendant had just been in a serious accident. However, while talking with him, Calder detected a "moderate, not real light" odor of alcohol on his breath. He then radioed for a traffic officer.[2]

Officer Collord responded to Calder's call. He talked to Calder and to Trudeau. He found defendant "visibly shaken," and he detected a "moderate" odor of alcohol on his breath. Defendant told Collord that he had had "two beers around noon" that day. Collord asked defendant to perform field sobriety tests. Defendant performed several other tests "well," and recited the alphabet "fine up to the letter 'w,' but he couldn't seem to remember what came after the letter 'w'."

Collord concluded that the accident had occurred when the other car had turned in front of defendant's car, which had been traveling in the opposite direction. He surmised that the other driver's failure to yield the right-of-way was the "primary cause" of the accident but noted that "some of the witnesses indicated that there may have been excessive

---

[1] Now ORS 813.010.

[2] Portland Bureau of Police policy provided that a district officer would initially investigate an accident report. If the accident involved an injury, or if the evidence indicated that someone involved in the accident may have been driving while under the influence of intoxicants, the district officer would summon a traffic officer to investigate further. Calder testified that, in this case, *both* of those factors were present.

speed on [defendant's] part." He arrested defendant for DUII and took him to the police station.

At the station, Collord requested that defendant perform two more field sobriety tests. His performance on those tests was "less well" or "uncertain." Because of the "still quite strong" odor of alcohol on his breath, Collord was skeptical about his statement that he had had only two beers several hours earlier. After advising defendant of his *Miranda* rights, Collord again asked him whether he had had anything to drink. Defendant then said that he had had three "rum and cokes" about 5:15 that afternoon. Collord requested that defendant submit to a breath test.[3] He did so. It showed that he had a blood alcohol level of .15.

In January, 1985, a drivers' license suspension hearing was held. *Former* ORS 482.541.[4] The Motor Vehicles Division (MVD) hearings officer found that Collord lacked "reasonable grounds to believe" that defendant had been driving while under the influence of intoxicants. He directed that MVD's prospective suspension of defendant's drivers license be withdrawn.

Defendant's motion to suppress in this case was based on two grounds: first, that the intoxilyzer result should be suppressed because Collord "had no probable cause to believe the Defendant to have been driving while under the influence of intoxicants;" and, second, that "the [MVD] Hearings Officer * * * following a contested hearing made a finding of fact that [Collord] did not have reasonable grounds to believe that [defendant] was driving while under the influence of intoxicants and, by the doctrine of collateral estoppel, that finding should result in the suppression of the intoxilyzer result in this case on the same grounds."[5]

The trial court concluded that Collord had probable cause to arrest defendant for DUII. In rejecting his collateral estoppel defense, the court stated:

"[W]hile it appears that there were findings of fact * * *, in

---

[3] *Former* ORS 487.805; now ORS 813.100.

[4] Now ORS 813.410.

[5] The MVD license suspension hearing audio tape and the hearing officer's findings and order were received in evidence in this case.

these kinds of cases before the DMV there is no appearance on the part of the state in a prosecutorial role or by the Multnomah County District Attorney's office."

Accordingly, the court denied defendant's motion to suppress. After a trial to the court on stipulated facts, defendant was convicted.

Defendant first contends that the state's evidence does not support the trial court's conclusion that Collord had probable cause to arrest. He argues that there was no evidence that he was impaired in his ability to operate his car, that he passed all the field sobriety tests administered at the scene of the accident and that Collord had concluded that the other driver had caused the accident by failing to yield the right-of-way. He also argues that Collord testified on cross-examination, that, at the scene of the accident, defendant was "polite and cooperative," his physical appearance was "normal," his clothes were "orderly," his eyes were "normal" and his ability to walk was "sure." Therefore, he argues, Collord had no probable cause to arrest and, thus, no legal basis to request that he take a breath test.

Because the trial court made no explicit findings of fact on the issue of probable cause, we infer the court's factual findings from its ultimate decision denying defendant's motion. We review those findings only to determine whether there is evidence to support them. *See State v. Johnson/Imel,* 16 Or App 560, 571-72, 519 P2d 1053 (1974).

ORS 133.310(1)(g) provides:

"A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed any of the following:

"* * * * *

"Driving while under the influence of intoxicants * * *."

ORS 131.005(11) provides:

" 'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

Probable cause to arrest does not require the quantum of evidence necessary to support a conviction.

■    At the hearing on defendant's motion to suppress, Calder testified that defendant was "kind of unsteady walking." He detected a "moderate, not real light," odor of alcohol on defendant's breath. He summoned a traffic officer because the accident involved *both* an injury and a driver who may have been drinking. Collord testified that he arrested defendant, because

> "there was a fairly serious accident involved here. [Defendant] smelled like he had been drinking, and when I asked him to do some tests, he couldn't seem to finish the alphabet."

Trudeau testified that, immediately before the collision, she saw defendant's vehicle "coming up fast," that the speed limit was 35 mph and that she estimated that defendant's car was going at least 10 mph faster than that. She observed him "switching lanes" immediately before he collided with the other car. On cross-examination, she described his vehicle as "jockeying for position — switching lanes" but not "swerving." We infer that she gave Calder and Collord at least the substance of that information. We conclude that there is evidence in the record to support the trial court's conclusion that Collord had probable cause to arrest defendant for DUII.

Defendant next contends that the state is barred from relitigating the question of probable cause on the ground of collateral estoppel.[6] He argues that, as relevant to this appeal, the MVD license suspension hearing and the subsequent DUII prosecution involve identical issues decided under the same principles of state law, *i.e.,* in each case the state is the moving party, its lawyers are the prosecutors and its key witness is Collord, the arresting officer. He argues further that the legality of the arrest was expressly determined by the MVD hearings officer after a contested case hearing based on sworn testimony subject to cross-examination. He relies primarily on *State v. Bradley,* 51 Or App 569, 626 P2d 403 (1981). The state argues that collateral estoppel does not apply, because a MVD hearing is not a court and a MVD hearings officer is not a judge.

---

[6] Defendant's pretrial motion was limited to the issue of collateral estoppel. In this court, he argues that the state is barred from relitigating the question of probable cause by virtue of collateral estoppel, *res judicata* or both. We decline to consider the application of *res judicata* in this case, because it was not raised below. *See State v. Kessler,* 289 Or 359, 371 n 17, 614 P2d 94 (1980); *State v. Hickmann,* 273 Or 358, 360, 540 P2d 1406 (1975).

*Former* ORS 482.541(3)(a), (c), authorizes MVD to contract with any person or agency to conduct its license suspension hearings. The provisions for contested case hearings, ORS 183.310 *et seq,* govern the hearings. *Former* ORS 482.541(2). ORS 43.130[7] shows that only *court* determinations, not administrative hearings, have collateral estoppel effect. *See State v. Dewey,* 206 Or 496, 505, 292 P2d 799 (1956); *Shannon v. Moffett,* 43 Or App 723, 604 P2d 407 (1979) *rev den* 288 Or 701 (1980). Defendant cites no authority which directly holds that an *administrative* determination may trigger operation of the doctrine of collateral estoppel in a criminal case, and we are aware of none.

■ While defendant is correct that collateral estoppel applies in criminal cases, the cases assume that a *judicial* proceeding is the only event which can give rise to the collateral estoppel effect. *See State v. George,* 253 Or 458, 455 P2d 609 (1969); *State v. McAllister,* 72 Or App 611, 696 P2d 1138 (1985); *State v. Campbell,* 56 Or App 527, 530, 642 P2d 346 (1982); *State v. Bradley, supra; Timms v. Cupp,* 38 Or App 339, 343, 590 P2d 264, *rev den* 286 Or 637 (1979).

■ *Bradley* does not change the result here. In that case, a probation revocation hearing was held before a trial court. On appeal, we held that, although a probation revocation hearing was neither a trial nor an action, it was a criminal proceeding which resulted in an order by a court. ORS 43.160 applies to an order by a court. We held that the state could be barred by collateral estoppel. In this case, the hearing was purely administrative. The trial court correctly determined that the doctrine of collateral estoppel was not applicable.

---

[7] ORS 43.130 provides:

"The effect of a judgment, decree or final order in an action, suit or proceeding *before a court or judge of this state* or of the United States, having jurisdiction is as follows:

"(1) In case of a judgment, decree or order against a specific thing or in respect to the probate of a will or the administration of the estate of a deceased person or in respect to the personal, political, or legal condition or relation of a particular person, the judgment, decree or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person.

"(2) In other cases, the judgment, decree or order is, in respect to the matter directly determined, conclusive between the parties, their representatives and their successors in interest by title subsequent to the commencement of the action, suit or proceeding, litigating for the same thing, under the same title and in the same capacity." (Emphasis supplied.)

Affirmed.