The PEOPLE of the State of Colorado, Petitioner,

v.

Dale Francis ALLEE, Respondent.

No. 85SC149.

Supreme Court of Colorado, En Banc.

June 29, 1987.

James F. Smith, Dist. Atty., Michael J. Milne, Deputy Dist. Atty., Brighton, for petitioner.

Vincent C. Todd, Denver, for respondent.

LOHR, Justice.

We granted certiorari to review a judgment of the Adams County District Court that affirmed an order of the County Court of Adams County dismissing charges of third degree assault and resisting arrest brought against the defendant, Dale F. Allee. Allee's defense was that his actions were legally justified because he was attempting to prevent a police officer from using excessive force in arresting Allee's son, Ronnie Allee. The county court dismissed the charges on the basis that a jury's acquittal of Ronnie Allee on charges identical to those against the defendant conclusively established that the defendant's actions were justified. The court reasoned that the judgment of acquittal collaterally estopped the People from asserting that the defendant's actions were not legally justified, even though the defendant was not a party to the case tried against Ronnie Allee. We conclude that the doctrine of collateral estoppel may not be asserted against the People by a defendant who was not a party to the prior criminal proceeding in which the issue that the People seek to relitigate against the defendant was decid-

ed. Accordingly, we reverse the judgment of the district court and direct that court to remand the case to the county court for reinstatement of the charges against the defendant.

## I.

### A.

We derive the facts underlying the charges against the defendant from the record of the trial of the defendant's son, Ronnie Allee.[1] Although the cases against the defendant and Ronnie Allee were brought separately, the charges arose from the same incident.

On the evening of September 5, 1983, Adams County sheriff's deputies Terry Meyers and Ulrike Davies went to Jimbo's Bar in Commerce City in response to a report of a fight. Upon arriving at the bar they observed Ronnie Allee and his wife, Cheryl, arguing in the parking lot. When Cheryl Allee started walking toward the officers, Ronnie Allee grabbed her from behind. Cheryl Allee then became hysterical and Officer Meyers told Ronnie Allee to release her. Ronnie Allee refused to release her, and the officers pried her from Ronnie Allee's grasp. It is at this point that the testimony of the officers diverges significantly from that of the defense witnesses.

The officers testified that when Cheryl Allee had been freed, Ronnie Allee began to assault Officer Meyers, who attempted to defend himself with his nightstick. Officer Davies attempted to aid Officer Meyers in subduing Ronnie Allee and handcuffing him. At this point, according to the officers, the defendant arrived on the scene and pulled Officer Meyers to the ground.

Ronnie Allee was able to break free from Officer Davies and went to where the defendant and Officer Meyers were struggling on the ground and began to hit and kick Officer Meyers. Officer Davies and Watch Commander Murray, who had arrived on the scene in response to a radio call by Officer Davies for help, were able to subdue the defendant and Ronnie Allee. The defendant and Ronnie Allee were then transported to the police station and booked.

Ronnie and Cheryl Allee's testimony was very different from that of the officers. Ronnie Allee testified that he had not assaulted any of the officers and that he did not resist arrest in any way. He contended instead that after the officers had pulled Cheryl Allee away from him, Officer Meyers attacked him with a nightstick. He then tried to protect himself from the blows, and the defendant pulled Officer Meyers to the ground from behind. Ronnie Allee also testified that he did not join in the fight between the defendant and Officer Meyers. Cheryl Allee corroborated Ronnie Allee's testimony that he put his hands up to protect himself from Officer Meyers's blows, but testified that she did not see any part of the incident after that point. Dale Allee did not testify at his son's trial.

### B.

Both Ronnie and Dale Allee were charged in separate cases with third degree assault, a class 1 misdemeanor, in violation of section 18-3-204, 8B C.R.S. (1986),[2] and resisting arrest, a class 2 misdemeanor, in violation of section 18-8-103, 8B C.R.S. (1986).[3] Both cases were assigned to the

---

1. The record of Ronnie Allee's trial is properly a part of the record before us in this case. The county court judge in the instant case, who was also the trial judge in Ronnie Allee's trial, relied on the record of Ronnie Allee's trial in dismissing the charges against Dale Allee, thereby tacitly taking judicial notice of that record. Also, the district court on appeal granted the defendant's motion to supplement the record on appeal with the record of Ronnie Allee's trial.

2. Section 18-3-204, 8B C.R.S. (1986), provides in pertinent part:

A person commits the crime of assault in the third degree if he knowingly or recklessly causes bodily injury to another person by means of a deadly weapon.

3. Section 18-8-103, 8B C.R.S. (1986), provides in pertinent part:

(1) A person commits resisting arrest if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:

same judge of the County Court of Adams County.

Ronnie Allee pleaded not guilty to the charges against him. His theory of defense was that he did not commit the crimes charged. More specifically, he claimed that he had never assaulted any of the officers or resisted arrest in any way, but that he had instead been the victim of excessive force on the part of the officers. Trial was to a jury, and Ronnie Allee was acquitted of both charges.

Dale Allee had requested and been granted a delay in the commencement of his trial pending the outcome of Ronnie Allee's trial. Following the jury's acquittal of Ronnie Allee, Dale Allee filed a Motion to Dismiss as Precluded by Collateral Estoppel. The motion alleged that the acquittal of Ronnie Allee established that Officer Meyers was using unlawful force against Ronnie Allee and that, therefore, Dale Allee was justified as a matter of law in using reasonable force against Officer Meyers to prevent the use of unlawful force by Officer Meyers against Ronnie Allee. *See* § 18–1–704(1), 8B C.R.S. (1986) (permitting the use of physical force in defense of a third person).[4]

The People moved to strike the motion to dismiss. The motion to strike alleged that principles of collateral estoppel were inapplicable to this case because (1) Dale Allee was not a party to or in privity with a party to Ronnie Allee's case, (2) the People did not have "a full and fair opportunity to litigate the issue of [justification]"[5] raised by the motion to dismiss, (3) Dale Allee did not testify at Ronnie Allee's trial, (4) no instructions pertaining to the defense of

justification were submitted to the jury in Ronnie Allee's trial, and (5) section 18–1–605, 8B C.R.S. (1986), allows the People to prosecute Dale Allee independently even though Ronnie Allee was acquitted.

A hearing on the defendant's motion to dismiss and the People's motion to strike was held before the judge assigned to Dale Allee's case—the same judge who had presided at Ronnie Allee's trial. The judge denied the People's motion to strike and granted the defendant's motion to dismiss. In denying the People's motion to strike, the court stated:

> The Court finds, concerning the ... elements which would establish collateral estoppel as an appropriate theory on which to proceed in this case that although Dale Allee was not a party to the Ronnie Allee trial the identity of parties or privity required for collateral estoppel does exist in this case since the parties against whom the doctrine was asserted are the same. That is the People of the State of Colorado, plaintiff, in both cases.
>
> It appears to the Court that issues raised in the motion to strike are identical to those which were litigated in the Ronnie Allee case, that there was opportunity in that case for those issues to be litigated fairly and completely, that there was a final verdict in the Ronnie Allee case, and therefore it is the finding of the Court that the motion to strike shall be denied.

With respect to the defendant's motion to dismiss, the court ruled:

> The Court finds that at the Ronnie Allee trial Ronnie Allee was found to be not guilty of resisting arrest and not

---

(a) Using or threatening to use physical force or violence against the peace officer or another; or
(b) Using any other means which creates a substantial risk of causing bodily injury to the peace officer or another.

**4.** Section 18–1–704(1), 8B C.R.S. (1986), provides:

Except as provided in subsections (2) and (3) of this section, a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that

other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

**5.** The People's motion to strike referred to "the issue of self-defense as raised by this Motion to Dismiss." However, the defendant's Motion to Dismiss as Precluded by Collateral Estoppel referred to "the defense of use of physical force in defense of a person pursuant to [§ 18–1–704, 8B C.R.S. (1986) ] . . . ." Therefore, it was the issue of "justification" rather than the issue of "self-defense" which was raised by the defendant's motion to dismiss.

guilty of assault. The Court finds that the evidence in the Ronnie Allee case established, when viewed in the light most favorable to the People and considering the result of that trial, that the force employed by Officer Meyers upon Ronnie Allee was unlawful force.

The Court finds that the elements of justification are available to the defendant Dale Allee and that the evidence presented in the Ronnie Allee case establishes, when viewed in the light most favorable to the People and in the light of results of that case, that the justification of the force used by Dale Allee is established in that it was not unreasonable, when considering the force being applied upon Ronnie Allee.[6]

The county court therefore granted the motion to dismiss. The People appealed the order of dismissal to the Adams County District Court. *See* Crim.P. 37.

The district court affirmed the decision of the county court. The district court held "that in some rare instances non-mutual collateral estoppel may be raised in Colorado ..." by a defendant in a criminal prosecution who was not a party to the prior criminal prosecution in which the issue sought to be relitigated by the People was decided. The district court held that collateral estoppel was appropriate under the facts in the present case because: (1) the judge who heard the evidence in Ronnie Allee's trial was the same judge assigned to Dale Allee's case; (2) there was no indication in the record nor was there any allegation by the People that additional evidence not presented at Ronnie Allee's trial would be presented at Dale Allee's trial; and (3) no purpose would be served, and judicial time would be wasted, by requiring the judge to sit through the People's case "before entering a ruling that, as a matter of law, the actions of the sheriff's officers were unreasonable."

We subsequently granted the People's petition for certiorari on the issues of whether a defendant may assert the doctrine of nonmutual collateral estoppel against the People based on a prior criminal proceeding in which he was not a party, and, if so, whether the requirements of nonmutual collateral estoppel were satisfied in the present case.

## II.

"The doctrine of collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Wright v. People*, 690 P.2d 1257, 1260 (Colo.1984) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)). The doctrine was first developed in the context of civil litigation in order to promote judicial economy, conserve private resources, and protect parties from the prospect of vexatious litigation. *See Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892, 894 (1942).

◼ Principles of collateral estoppel may be invoked by criminal defendants as well as by parties to civil lawsuits. Although application of the doctrine of collateral estoppel to criminal prosecutions was once thought to have its sole basis in the common law, *see United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916), it is now well settled that "[t]he doctrine of collateral estoppel or issue preclusion is an integral part of the concept of double jeopardy which is proscribed by the United States and Colorado Constitutions." *Wright v. People*, 690 P.2d at 1260. *Accord Ashe v. Swenson*, 397 U.S. at 445–46, 90 S.Ct. at 1195. However, it is also clear that application of the doctrine of collateral estoppel is not limited to those cases in

---

**6.** As the district court recognized on appeal, the county court's order was "more expansive than merely one of adopting non-mutual collateral estoppel." The county court judge made numerous factual findings based on his participation as the judge in Ronnie Allee's jury trial. Because of our resolution of the issue of nonmutual collateral estoppel, we need not decide whether the county court acted properly in making factual findings based on the record of Ronnie Allee's trial.

which double jeopardy is involved. *People ex rel. Farina v. District Court,* 191 Colo. 225, 228, 553 P.2d 394, 396 (1976). In order for a defendant in a criminal case to invoke collateral estoppel against the state, whether double jeopardy is involved or not, four requirements have traditionally been regarded as essential: (1) the issue that the state desires to litigate must be identical to an issue that was actually and necessarily decided in the prior litigation; (2) there must have been a final judgment on the merits of the prior litigation; (3) the state must have been a party to or in privity with a party to the prior litigation; and (4) the defendant seeking to assert collateral estoppel must have been a party to the prior litigation.[7] *See Williamsen v. People,* 735 P.2d 176, 182 (Colo.1987); *Kott v. State,* 678 P.2d 386, 391 (Alaska 1984); *State v. Jimenez,* 130 Ariz. 138, 634 P.2d 950, 952 (1981). *See generally* Annotation, *Modern Status of Doctrine of Res Judicata In Criminal Cases,* 9 A.L.R. 3d 203 (1966).

In the context of civil litigation, this last requirement, often referred to as the "mutuality" requirement, has been largely abandoned—the party asserting collateral estoppel no longer need have been a party to or in privity with a party to the prior litigation. *E.g., Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892 (1942); *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973); *Murphy v. Northern Colorado Grain Co., Inc.,* 30 Colo.App. 21, 488 P.2d 103 (1971). *See* Semmel, *Collateral Estoppel, Mutuality and Joinder of Parties,* 68 Colum.L.Rev. 1457 (1968); Ves-

tal, *Issue Preclusion and Criminal Prosecutions,* 65 Iowa L.Rev. 281 (1980). Therefore, in a civil case "[c]ollateral estoppel bars relitigation of an issue determined at a prior proceeding if (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel is sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding." *Industrial Comm'n v. Moffat County School Dist.,* 732 P.2d 616, 619–20 (Colo.1987) (footnote omitted). *Accord Pomeroy,* 183 Colo. at 350–51, 517 P.2d at 399. *See Blonder-Tongue,* 402 U.S. at 328–30, 91 S.Ct. at 1442–43; *Restatement (Second) of Judgments* § 29 (1982). In civil litigation, application of "nonmutual" collateral estoppel, as this form of the doctrine is often called, "promote[s] judicial economy and conserve[s] private resources without unfairness to the litigant against whom estoppel [is] invoked." *Standefer v. United States,* 447 U.S. 10, 21, 100 S.Ct. 1999, 2007, 64 L.Ed.2d 689 (1980). *Accord Blonder-Tongue,* 402 U.S. at 320–30, 91 S.Ct. at 1439–43.

However, despite the fact that mutuality of parties is generally no longer required in the context of civil proceedings, almost all jurisdictions continue to require mutuality of parties in criminal proceedings. *E.g., Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980); *Kott v. State,* 678 P.2d 386 (Alaska 1984); *State v. Jimenez,* 130 Ariz. 138, 634 P.2d 950 (1981); *Jared v. State,* 17 Ark.App. 223, 707 S.W.2d 325 (1986) (based on statute);

7. In our prior criminal cases dealing with the issue of collateral estoppel we have frequently omitted this last requirement when listing the requirements for applying collateral estoppel in a given case. *E.g., Williamsen v. People,* 735 P.2d 176, 182 (Colo.1987); *People ex rel. Gallagher v. District Court,* 666 P.2d 550, 554 (Colo. 1983); *People v. Hearty,* 644 P.2d 302, 312 (Colo. 1982). However, in each of those cases the party asserting the doctrine was a party to the prior proceeding. Furthermore, as noted on page 14 of this opinion we have consistently stated in our previous opinions that collateral estoppel in the criminal context bars relitigation *between the same parties* of an issue actually and necessarily decided in a prior criminal proceeding. Therefore, our past cases cannot be read as support for the proposition that mutuality of parties is no longer required for assertion of the doctrine of collateral estoppel in criminal cases.

*Potts v. State*, 430 So.2d 900 (Fla.1982); *State v. Wilson*, 236 Iowa 429, 19 N.W.2d 232 (1945); *Commonwealth v. Cerveny*, 387 Mass. 280, 439 N.E.2d 754 (1982); *State v. Cegon*, 309 N.W.2d 313 (Minn. 1981); *State v. Swearingin*, 564 S.W.2d 351 (Mo.Ct.App.1978); *Larsen v. State*, 93 Nev. 397, 566 P.2d 413 (1977) (but stating in dicta that "special circumstances" may warrant deviation from the rule); *State v. Kaplan*, 124 N.H. 38, 469 A.2d 1354 (1983) (refusing to do away with the mutuality requirement on the facts before the court); *State v. Parris*, 175 *N.J.Super.* 604, 421 A.2d 604 (1980); *People v. Berkowitz*, 50 N.Y.2d 333, 428 N.Y.S.2d 927, 406 N.E.2d 783 (1980); *State v. Campbell*, 56 Or.App. 527, 642 P.2d 346 (1982); *Commonwealth v. Brown*, 473 Pa. 458, 375 A.2d 331 (1977) (based in part on statute). *See generally* Annotation, *Modern Status of Doctrine of Res Judicata in Criminal Cases*, 9 A.L. R.3d 203 (1966). *But see People v. Taylor*, 12 Cal.3d 686, 117 Cal.Rptr. 70, 527 P.2d 622 (1974) (collateral estoppel bars conviction of a defendant based on his vicarious responsibility for the acts of a previously acquitted confederate); *People v. Superior Court*, 44 Cal.App.3d 494, 118 Cal.Rptr. 702 (1975) (collateral estoppel bars conviction of alleged conspirator where all of his alleged co-conspirators have been acquitted in a separate trial); *State v. Gonzalez*, 75 N.J. 181, 380 A.2d 1128 (1977) (under certain circumstances, collateral estoppel applies to bar introduction of evidence in trial of a defendant where that evidence was suppressed on motion of co-defendant at hearing in which defendant was unable to participate).

This court, in *Roberts v. People*, 103 Colo. 250, 87 P.2d 251 (1938), considered the mutuality requirement in the context of a criminal case, although our discussion was not explicitly couched in terms of mutuality and collateral estoppel. In that case, the defendant was charged with being an accessory after the fact to a murder. The alleged murderer was tried in a separate proceeding and acquitted. Thereafter, the defendant sought unsuccessfully to put the alleged murderer's judgment of acquittal into evidence. The defendant was also unsuccessful in objecting to the judge's instruction to the jury that the acquittal of the alleged murderer "was not only not binding upon [the jury] in the consideration of the accessory charge against [the defendant], but such fact was not any evidence to be considered by the jury in determining whether or not the crime was committed, and who committed it if the jury found such a crime to have been committed." *Id.* at 256, 87 P.2d at 254. We subsequently upheld the trial court's rulings.

In rejecting the defendant's arguments in *Roberts v. People*, we reasoned that the acquittal of a defendant in a separate trial has no relevance to the case against another defendant since an acquittal establishes a legal status of innocence that conceptually can be distinct from a factual status of innocence.

> There may be a murder committed in fact and still the state may not be able legally to establish it for the purpose of the imposition of a penalty on the murderer. A verdict of acquittal does not establish a status of innocence. Innocence, while it entitles one to an acquittal, is not always present where a verdict of not guilty is returned. If the jury has a reasonable doubt of guilt under all the evidence, even if defendant is in fact guilty, it is its duty to acquit. Innocence is a factual status. Nonliability to account resulting from acquittal is a legal status. The guilt or innocence of an accessory after the fact depends as to one element on the factual status of the principal as to guilt or innocence; not on his legal status as regards liability or nonliability to suffer a penalty.

*Roberts v. People*, 103 Colo. at 257, 87 P.2d at 255.

Therefore, a defendant may not use the acquittal of another defendant to establish a fact crucial to his case. Lack of mutuality was also of concern to this court in arriving at that conclusion.

> Since it is guilt in fact and not an antecedent conviction that the state must prove against the accessory then it is guilt in fact when shown by competent

evidence that the accessory defendant must controvert. A judgment of conviction and a judgment of acquittal are equally solemn judicial acts. If on the trial of an accessory a judgment of conviction of the principal does not bind the defendant when offered offensively by the state, and we are convinced it does not, then we do not think [a judgment of acquittal] binds the state when offered defensively by the defendant.

*Id.* at 259, 87 P.2d at 256.

Our decision in *Roberts v. People* was also based on the important policy interest in the enforcement of the criminal law and recognized that reasons that run counter to this interest may have provided the basis for the previous acquittal.

"A verdict of not guilty is not a verdict of innocence. It is simply a verdict of not proven in the particular case tried, and it is not conclusive against the state in favor of any other person than the defendant who was actually acquitted. The state might not be able to make proof of the offense in the trial of one party for many causes, yet might be able to make proof on the trial of the other. Because there may have been a miscarriage of justice as to one joint offender is no reason why there should also be a miscarriage of justice as to the other joint offender."

*Id.* at 261, 87 P.2d at 256–57 (quoting *Woody v. State,* 10 Okl.Cr. 322, 136 P. 430, 432 (1913)). *Accord Marquiz v. People,* 726 P.2d 1105, 1107–08 (Colo.1986) (rule of consistency does not bar conviction of defendant for conspiracy when all alleged coconspirators have previously been acquitted in separate proceedings).

This court has never abandoned the mutuality requirement in the context of criminal cases. In those criminal cases in which we have had the opportunity to address some aspect of collateral estoppel, we have consistently noted that collateral estoppel bars relitigation *between the same parties* of issues actually and necessarily decided at a prior trial. *E.g., Williamsen v. People,* 735 P.2d 176, 182 (Colo.1987); *Wright v. People,* 690 P.2d 1257, 1260 (Colo.1984);

*People ex rel. Gallagher v. District Court,* 666 P.2d 550, 554 (Colo.1983); *People ex rel. Farina v. District Court,* 191 Colo. 225, 228, 553 P.2d 394, 396 (1976); *People v. Horvat,* 186 Colo. 202, 205, 527 P.2d 47, 48 (1974); *People v. Kernanen,* 178 Colo. 234, 237, 497 P.2d 8, 10 (1972). Indeed, since *Roberts v. People,* we have never been squarely presented with a challenge to the mutuality requirement in a criminal case.

In the present case we are presented with such a challenge. The defendant acknowledges *Roberts v. People,* but urges us to retreat from the rationale of that case and to hold that the acquittal of one defendant may collaterally estop the state from prosecuting another defendant under circumstances such as those present in this case. We conclude that certain aspects of criminal proceedings serve to deny the People the full and fair opportunity to litigate an issue that is normally afforded a party in civil cases and that the policy considerations that support the application of nonmutual collateral estoppel in civil cases are outweighed by countervailing policy considerations that are unique to criminal proceedings. Therefore, a defendant in a criminal case cannot assert the doctrine of collateral estoppel against the People unless that defendant was a party to the prior criminal proceeding in which the issue sought to be litigated by the People was actually and necessarily decided.

Our analysis of this issue begins with the relatively recent United States Supreme Court case of *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). In *Standefer,* a unanimous Court held that nonmutual collateral estoppel has no application to federal criminal prosecutions. *Id.* at 21–25, 100 S.Ct. at 2006–2008. The Court concluded that criminal cases involve " 'competing policy considerations' that outweigh the economy concerns that undergird the estoppel doctrine." *Id.* at 25, 100 S.Ct. at 2008.

First, the Court noted that the state often lacks the kind of full and fair opportunity to litigate an issue that is normally

afforded a party in a civil case. *Id.* at 22, 100 S.Ct. at 2007.

Several aspects of our criminal law make this so: the prosecution's discovery rights in criminal cases are limited, both by rules of court and constitutional privileges; it is prohibited from being granted a directed verdict or from obtaining a judgment notwithstanding the verdict no matter how clear the evidence in support of guilt ...; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the evidence ...; and it cannot secure appellate review where a defendant has been acquitted.

*Standefer,* 447 U.S. at 22, 100 S.Ct. at 2007 (citations to Federal Rules of Civil Procedure omitted). *Accord, e.g., Kott v. State,* 678 P.2d 386, 392 (Alaska 1984); *People v. Berkowitz,* 50 N.Y.2d 333, 428 N.Y.S.2d 927, 934, 406 N.E.2d 783, 790 (1980); *State v. Campbell,* 56 Or.App. 527, 642 P.2d 346, 348–49 (1982).

▮ The defendant in the present case correctly points out that in Colorado the People may appeal any question of law decided by a trial court in a criminal case in which a defendant was acquitted. *See* § 16–12–102, 8A C.R.S. (1986). However, the appellate court is limited in its review to determining whether the trial court erred, and it may not order a new trial if an error was committed and the defendant was subsequently acquitted. *People v. Paulsen,* 198 Colo. 458, 460, 601 P.2d 634, 636 (1979); *Krutka v. Spinuzzi,* 153 Colo. 115, 384 P.2d 928 (1963). Furthermore, the People are limited to appealing questions of law; they may not appeal determinations of fact. *People v. Ware,* 187 Colo. 28, 528 P.2d 224 (1974); *People v. Ledesma,* 171 Colo. 407, 468 P.2d 27 (1970).

▮ In short, the error-correction procedures available to a party in a civil case are not available to nearly as great an extent to the People in a criminal case. In the absence of such remedial procedures in criminal cases, juries may assume the power to acquit out of compassion, compromise or prejudice. *Standefer,* 447 U.S. at 22, 100 S.Ct. at 2007; *Marquiz v. People,* 726 P.2d 1105, 1107 (Colo.1986). Therefore, the

premise of collateral estoppel, which is the confidence that the result achieved in the first trial was substantially correct, is lacking to a significant extent with respect to criminal trials. *Standefer,* 447 U.S. at 23 n. 18, 100 S.Ct. at 2007 n. 18.

The Court in *Standefer* also noted other unique aspects of the criminal law that serve to deny the People the full and fair opportunity to litigate an issue in a criminal case that is generally afforded a party in a civil case. Foremost among these are rules of evidence and exclusion.

It is frequently true in criminal cases that evidence inadmissible against one defendant is admissible against another. The exclusionary rule, for example, may bar the Government from introducing evidence against one defendant because that evidence was obtained in violation of his constitutional rights. And the suppression of that evidence may result in an acquittal. The same evidence, however, may be admissible against other parties to the crime "whose rights were [not] violated." ... In such circumstances, where evidentiary rules prevent the Government from presenting all its proof in the first case, application of nonmutual collateral estoppel would be plainly unwarranted.

*Standefer,* 447 U.S. at 23–24, 100 S.Ct. at 2007–2008 (citations omitted). *Accord Kott v. State,* 678 P.2d at 392; *People v. Berkowitz,* 428 N.Y.S.2d at 934, 406 N.E.2d at 790. Furthermore,

[t]he evidence presented to the juries and the manner in which that evidence is presented may be significantly different and certainly will never be identical. Certain witnesses or other evidence may be available for one trial and not the other, the prosecution may not present all of the available evidence in each trial, new evidence may be discovered between trials, and the prosecution may not present its case as effectively in one trial as it does in the other.

*Marquiz v. People,* 726 P.2d at 1107.

The defendant recognizes this concern with possible evidentiary disparities, but argues that no such problem exists in the

present case because: (1) the People have not contended that they will present different evidence in the defendant's trial than they presented in Ronnie Allee's trial; and (2) the judge in the defendant's case was the same judge who presided over Ronnie Allee's trial. We choose not to adopt a case-by-case approach to this problem. In rejecting an argument similar to that advanced by the defendant here, the United States Supreme Court, in *Standefer*, stated:

It is argued that this concern could be met on a case-by-case basis by conducting a pretrial hearing to determine whether any such evidentiary ruling had deprived the Government of an opportunity to present its case fully the first time around. That process, however, could prove protracted and burdensome. Under such a scheme, the Government presumably would be entitled to seek review of any adverse evidentiary ruling rendered in the first proceeding and of any aspect of the jury charge in that case that worked to its detriment. Nothing short of that would insure that its opportunity to litigate had been "full and fair." If so, the "pretrial hearing" would fast become a substitute for appellate review, and the very purpose of litigation economy that estoppel is designed to promote would be frustrated.

*Standefer*, 447 U.S. at 24, 100 S.Ct. at 2008.

Criminal cases also involve a consideration wholly absent in civil cases—the important state interest in enforcement of the criminal law. We are persuaded that this interest outweighs the concerns for crowded court dockets and consistency of ver-

dicts—two important considerations favoring the use of collateral estoppel. *See People v. Taylor*, 12 Cal.3d 686, 117 Cal.Rptr. 70, 76, 527 P.2d 622, 628 (1974) (enumerating policies favoring application of collateral estoppel).

[I]n the criminal law, in contrast to civil litigation, society has an overwhelming interest in ensuring not merely that the determination of guilt or innocence be made, but that it be made correctly. While the correct resolution of civil disputes is indeed an important goal of our legal system, it may fairly be said that society's primary interest in the resolution of civil disputes is that they be settled in a peaceful, orderly, and impartial manner. Since this is so, it is appropriate that litigation-limiting devices such as the doctrine of collateral estoppel be liberally applied in civil litigation. In contradistinction, it is the correctness of the result which is of pre-eminent concern in a criminal prosecution, for the major function of a criminal proceeding is the conviction of the guilty and the acquittal of the innocent, not the swift resolution of some private dispute between the prosecutor and the accused. Hence, the civil doctrine of collateral estoppel, which accepts the occasional enthronement of erroneous findings of fact as a necessary cost of conserving the time and resources of the parties and the courts, is of less relevance in the criminal law.

*People v. Berkowitz*, 428 N.Y.S.2d 933–34, 406 N.E.2d at 789–90. *Accord, e.g., Standefer*, 447 U.S. at 24–25, 100 S.Ct. at 2008; *Kott v. State*, 678 P.2d at 392–93.[8]

8. The People argued before the county court and the district court that the General Assembly has apparently recognized the importance of achieving a correct result in each criminal case by enacting § 18–1–605, 8B C.R.S. (1986), and that that statute precludes application of nonmutual collateral estoppel to criminal cases. Section 18–1–605 provides:

In any prosecution for an offense in which criminal liability is based upon the behavior of another pursuant to sections 18–1–601 to 18–1–604, it is no defense that the other person has not been prosecuted for or convicted of any offense based upon the behavior in

question or has been convicted of a different offense or degree of offense, or the defendant belongs to a class of persons who by definition of the offense are legally incapable of committing the offense in an individual capacity.

We note that this statute does not expressly address the prosecution of a defendant following the *acquittal* of the person on whose conduct the defendant's liability is allegedly based. However, the People have not placed the argument they made before the county court and the district court with respect to § 18–1–605 before this court, and we therefore need not address

Similarly, the prospect for inconsistent verdicts is not as compelling a reason for a liberal application of the doctrine of collateral estoppel in criminal cases as it is in civil cases. Inconsistent verdicts are not necessarily repugnant to our sense of justice in criminal cases because society's interest in enforcement of the criminal law "dictates that we guard against compounding the effect of a possibly erroneous or irrational acquittal." *Marquiz v. People,* 726 P.2d at 1107–08. *Cf. Roberts v. People,* 103 Colo. 250, 87 P.2d 251 (1938). We believe that faith in our judicial system would be weakened by allowing the acquittal of one defendant to prevent the prosecution of another defendant when that acquittal may have been based on reasons, as discussed previously, that have little to do with the factual guilt or innocence of the acquitted defendant. As we stated in *Marquiz v. People* with respect to the prosecution of an alleged conspirator after his alleged coconspirators had been acquitted in separate proceedings, " 'Because there may have been a miscarriage of justice as to one joint offender is no reason why there should also be a miscarriage of justice as to the other joint offender.' " *Marquiz v. People,* 726 P.2d at 1108 (quoting *Roberts v. People,* 103 Colo. at 261, 87 P.2d at 257). *See also State v. Gonzalez,* 75 N.J. 181, 380 A.2d 1128, 1134–35 (1977).

We also note that the doctrine of nonmutual collateral estoppel is not needed in criminal cases to protect a defendant from burdensome and vexatious litigation. *People v. Taylor,* 12 Cal.3d 686, 117 Cal.Rptr. 70, 77, 527 P.2d 622, 629 (1974); *Kott v. State,* 678 P.2d at 393; *People v. Berkowitz,* 428 N.Y.S.2d at 934, 406 N.E.2d at 790. Defendants are largely protected from the prospects of such litigation by constitutional proscriptions against double jeopardy. Furthermore, the General Assembly has enacted statutory limitations on multiple prosecutions of the same defendant for crimes arising out of the same criminal episode. *See* § 18-1-408, 8B C.R.S. (1986). Therefore, the concern for protecting individuals from burdensome and vexatious litigation, a concern which favors application of the doctrine of nonmutual collateral estoppel in civil cases, is not a persuasive basis for extending the doctrine of nonmutual collateral estoppel to criminal cases.

## III.

In summary, the traditional reasons for applying nonmutual collateral estoppel in civil cases have less force in the context of criminal litigation and are outweighed by other policies unique to the criminal law. We conclude that the acquittal of one defendant in a separate proceeding does not collaterally estop the People from prosecuting another defendant in a separate trial.[9] The jury's acquittal of Ronnie Allee does not mean that the People will necessarily be unable to prove Dale Allee's guilt beyond a reasonable doubt. We see no persuasive reason to forbid the People from attempting to do so. The judgment of the district court is reversed and the case is returned to that court with directions to remand to the county court for reinstatement of the charges against the defendant, Dale Allee.[10]

the implications of that statute in the context of this case.

9. We need not decide today whether our holding should be applied to all conceivable situations that may arise in the context of the criminal law.

10. Because we decide that a defendant who was not a party to the case in which the issue the People seek to litigate was actually and necessarily decided may not assert the doctrine of nonmutual collateral estoppel against the People as to that issue, we need not decide whether the other requirements for assertion of the doctrine were satisfied in the present case. However, we have serious doubts as to whether the county court correctly determined in this case that all of those requirements were met. For instance, the issue actually and necessarily decided in Ronnie Allee's trial was whether he had resisted arrest and assaulted the officers or whether he had merely put his hands up to protect himself from Officer Meyers's blows and not offered any resistance. On the other hand,

---

the issues to be actually and necessarily decided in Dale Allee's case are whether he reasonably believed that Officer Meyers was using unlawful force against Ronnie Allee and whether the force he used against Officer Meyers was reasonably necessary to protect Ronnie Allee, *see* § 18–1–704(1), 8B C.R.S. (1986). It may be that these issues are not so intertwined as to give rise to the application of collateral estoppel.